IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SUZETTE CAMPBELL OHAI**, | CIVIL ACTION |
| Plaintiff, | |
| v. | NO. 21-3539-KSM |
| **PATENAUDE & FELIX, A.P.C., et al.**, | |
| Defendants. | |

MEMORANDUM

**MARSTON, J.**                                                                November 23, 2021

Plaintiff Suzette Campbell Ohai claims that Defendants Patenaude & Felix, A.P.C. ("P&F") and LVNV Funding, LLC ("LVNV") violated the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* (Doc. No. 1-1.) P&F, with LVNV's consent, removed the suit, which was originally filed in Pennsylvania state court, to this Court on August 9, 2021. (Doc. No. 1.) P&F moved to dismiss this matter for failure to state a claim upon which relief can be granted.[1] (Doc. No. 4.) Ohai filed a response in opposition to the motion to dismiss,[2] and P&F filed a reply. (Doc. Nos. 10 & 18.) For the reasons discussed below, P&F's motion to dismiss is granted, and this matter is dismissed with prejudice as against P&F.

---

[1] Although Ohai's claims against LVNV are *respondeat superior* claims based on the P&F employee's use of the word "summons" (Doc. No. 1), LVNV answered the complaint (Doc. No. 8) and did not join P&F's motion to dismiss.

[2] Attached to Ohai's response is an affidavit she authored in which she describes her actions and feelings after hearing the word "summons" on the phone call. (Doc. No. 10-2.) The Court need not and does not consider this affidavit, which is extraneous to the complaint, in evaluating P&F's motion to dismiss. *See Johns v. Northland Grp.*, 76 F. Supp. 3d 590, 602 n.5 (E.D. Pa. 2014).

**I.      Background**

Taking the allegations in the complaint as true, the relevant facts are as follows. Ohai owed consumer credit card debt to Synchrony Bank. (Doc. No. 1-1 at ¶¶ 9–11, Doc. No. 5-1 at 2.) Synchrony Bank assigned Ohai's debt to LVNV, and LVNV engaged P&F as the attorney debt collector on Ohai's account. (Doc. No. 1-1 at ¶ 14–15.) In March 2021, on LVNV's behalf, P&F filed suit against Ohai in the Pennsylvania Court of Common Pleas in Bucks County seeking to recover $4,802.92. (*Id.* at ¶ 16; *see also* Doc. No. 5-1 at 3.)

On May 6, 2021, Ohai called P&F and was connected with the P&F employee servicing her account (the "Account Manager"). (Doc. No. 5-2, May 6, 2021 Phone Recording at 1:30.) Ohai told the Account Manager that *she* was recording the phone call, sought to "settle" her account for $500, and asked if there were any court costs or legal fees associated with that account. (*Id.* at 1:30–2:25, 2:42–3:06.) The Account Manager informed Ohai that they could not settle her account for $500, and Ohai replied, "Hmm—I'm just going to have to give you guys a call back." (*Id.* at 2:25–3:29.)

Ohai called P&F again on May 19, 2021. (Doc. No. 5-2, May 19, 2021 Phone Recording.) She again informed the Account Manager that "all [her] calls are being recorded" (*id.* at 1:20–1:37) and renewed the attempts to settle her account:

> P&F:   [W]e have a current balance of the suit that was filed for $4,802.92. Did you receive that summons?
>
> Ohai:   I can pay $1,000.
>
> P&F:   And this is monthly?
>
> Ohai:   No, I want a settlement.
>
> P&F:   Let me see if I can do that here. . . . So at this time, I cannot do $1,000 settlement. Let me see. Are you able to do $1,300 to satisfy the account and get it closed? That's about the minimum I can get you here.

> Ohai: I cannot do $1,300. Like I said, I can only do a thousand. I'm on Disability. I can only do $1,000.
>
> P&F: Okay. And I do apologize, I would not be able to agree to anything like that at this time. . . .
>
> Ohai: Can you do $1,200? Can you settle for $1,200? Settle completely for $1,200?
>
> P&F: Let me see if our client will even allow it, even do any of the offers that I'm giving you because I'm trying—I'm stretching this for you. I'm so sorry, ma'am. . . . Okay. So, no, I do apologize, I'm not even coming back with anything close with that, unfortunately. . . .
>
> Ohai: Oh, boy. There's nothing else you can do?
>
> P&F: No, ma'am.

(*Id.* at 3:09–7:55.)

Ohai contends that the Account Manager's use of the word "summons" "misled and confused" her in violation of the FDCPA because "no summons of any kind had ever been issued in [the case pending in the Court of Common Pleas]" and she "honestly believed that she was <u>required</u> to come to court and that if she did not she would be in non-compliance with some law or governing directive." (Doc. No. 1-1 at ¶¶ 18–20, 23 (emphasis in original).)

## II. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However, an exception to the general rule is that a document *integral to*

3

*or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (cleaned up). Similarly, the Court "may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).[3]

## III. Analysis

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.[4] Debt collection communications are misleading or deceptive within the meaning of § 1692e when they "can be reasonably read to have two or more different meanings, one of which is inaccurate." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 222 (3d Cir. 2008). A statement is "false" or "misleading" within the meaning of the FDCPA if it is materially false—that is, "if it has the potential to affect the decision-making process of the least sophisticated debtor." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015). This is a lower standard than asking whether the communication would have fooled a reasonable debtor. *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000).

---

[3] Although these Third Circuit opinions refer to "documents," we find that we may consider the phone recordings attached as exhibits to P&F's motion to dismiss, as they are undisputedly authentic, and "as they are matters incorporated by reference and integral to Plaintiff's claim." *Boland v. Select Comfort Corp.*, No. 1:10-cv-00465, 2010 WL 3083021, at *4 n.8 (M.D. Pa. Aug. 6, 2010).

[4] In its motion to dismiss, P&F asserts that "Plaintiff . . . contends that Defendant's use of the word 'summons' violates section 1692f of the FDCPA." (Doc. No. 5 at 9.) The Court disagrees. While the complaint does cite to § 1692f (Doc. No. 1-1 at ¶ 27), it never alleges that either Defendant violated that section. And in her response to the motion to the dismiss, she characterizes her complaint as only alleging "that Defendant Patenaude and Felix, A.P.C. violated 15 USC 1692e of the FDCPA." (Doc. No. 10-1 at 4.)

Although the least sophisticated debtor may be "gullible," *see Hopkins v. Collecto, Inc.*, 994 F.3d 117, 122 (3d Cir. 2021), courts need not hold a debt collector hostage to incredulous claims of falsity or deception. The least sophisticated debtor standard does not require courts to credit "bizarre or idiosyncratic interpretations of collection notices," because even the least sophisticated debtor is expected to possess "a quotient of reasonableness," *Wilson*, 225 F.3d at 354 (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (3d Cir. 1996)).

Telephone communications regarding attempts to collect a debt can serve as a basis for liability under § 1692e. *See Tepper v. Amos Fin., LLC*, Civil Action No. 15-cv-5834, 2017 WL 3446886, at *10 (E.D. Pa. Aug. 11, 2017). To create such liability, the phone calls must fall into one of the three general categories of conduct forbidden by § 1692: "misleading consumers about the debt collector's identity, about the character of the debt itself, [or] about the consequences of a consumer's decisions about the debt." *Bermudez v. Diversified Consultants Inc.*, Civil Action No. 18-2004, 2019 WL 415569, at *3 (E.D. Pa. Feb. 1, 2019); *see also Mendoza v. Diversified Consultants, Inc.*, Civil Action No. 18-2005, 2019 WL 2524117, at *4 (E.D. Pa. June 18, 2019). A phone call or message that conveys only accurate information cannot serve as a basis for § 1692e liability, *see Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 284 (3d Cir. 2018); *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 622 (E.D. Pa. 2015), nor can phone calls that include false or misleading information that is immaterial to debtors' choices about how to address their debts, *see Mendoza*, 2019 WL 2524117, at *5; *Bermudez*, 2019 WL 415569, at *4.

In this case, even the least sophisticated debtor would not be confused or misled by the P&F employee's question about whether Ohai had received the "summons." While her response in opposition to the motion to dismiss is somewhat difficult to parse, Ohai appears to contend

that the use of the word "summons" was false, misleading, or deceptive in four ways. First, she claims that she was subjectively misled by the use of the word "summons." (Doc. No. 10-1 at 3.) Second, she asserts that Pennsylvania courts only issue summonses for criminal matters. (*Id.*) Third, she says, no summons was actually issued. (*Id.* at p. 2.) Finally, she avers that she was not required to appear in the state court case. (*Id.*) None of these arguments is availing.

First, Ohai's subjective beliefs are irrelevant. Given Ohai's repeated attempts to negotiate a favorable settlement of her debt, her statements that she was recording her phone calls with P&F (*see generally* Doc. No. 5-2, May 6, 2021 Phone Recording, May 19, 2021 Phone Recording), and her past experiences as an FDCPA claimant, *see Campbell v. J. Scott Watson, P.C.*, Civil Action No. 09-984, 2009 WL 4544395 (E.D. Pa. Nov. 30, 2009), the Court would be hard pressed to describe her as the "least sophisticated debtor." But even if she were, her subjective feelings and beliefs upon hearing the word "summons" used by the P&F employee would not be relevant to whether Defendants violated the FDCPA. The least sophisticated debtor standard is an objective one—it asks not what the actual plaintiff believed, but whether a *hypothetical* debtor would have been misled or deceived. *See Hopkins*, 994 F.3d at 122; *Levins*, 902 F.3d at 280; *Wilson*, 225 F.3d at 354–55. This objectivity is important; it protects debt collectors from the avarice of unscrupulous debtors who might misrepresent their actual state of mind and ensures that debt collectors treat debtors in a manner that is consistent and fair. *See Wilson*, 225 F.3d at 354–55; *Zarichny*, 80 F. Supp. 3d at 622. Therefore, what Ohai subjectively believed regarding the use of the word "summons" in her phone call is irrelevant to whether P&F's conduct violated the FDCPA.

Second, as for Ohai's contention that Pennsylvania courts only issue summonses in criminal or traffic matters, the Court finds this distinction immaterial. To begin, the Court is

skeptical of the veracity of this assertion. The docket from the Pennsylvania state court proceedings in this matter lists the "Case Type" as "WRIT OF SUMMONS." (Doc. No. 1-2 at 1.) Indeed, Pennsylvania's courts sometimes refer to civil process as a "writ of summons" in their published opinions. *See, e.g.*, *Cope v. Ins. Comm'r of Pa.*, 955 A.2d 1043, 1050 (Pa. Commw. Ct. 2008); *Azzarrelli v. City of Scranton*, 655 A.2d 648, 652 (Pa. Commw. Ct. 1995); *Estate of Brown v. Rival Mfg. Co.*, 28 Phila. Co. Rptr. 166, 167 (Pa. Ct. Comm. Pl. 1994).

And, even to the extent that Pennsylvania's courts refer to civil process as something other than a "summons," the Court finds that referring to civil process in the context of a discussion of a lawsuit that has been filed against a debtor as a "summons" is not misleading, confusing, or materially false. "Summons" is a term commonly used to refer to civil process requiring a defendant to respond to a plaintiff's claims. *See, e.g.*, Summons, BLACK'S LAW DICTIONARY (11th ed. 2019); Summons, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/summons; Summons, OXFORD ENGLISH DICTIONARY, https://www.oed.com/view/Entry/194010#eid19958123. Even if Pennsylvania does not issue "summonses" in civil cases and instead refers to them by some other term, only a sophisticated litigant could be expected to recognize this semantic technicality (not the least sophisticated debtor).

The Third Circuit's decision in *Jensen v. Pressler & Pressler* is illustrative of this point. In that case, the court concluded that a subpoena issued to a debtor which mistakenly included the wrong name for the clerk of court was not materially false in violation of the FDCPA. *Jensen*, 791 F.3d at 422. Such a minor mistake, the court explained, "could not possibly have affected the least sophisticated debtor's 'ability to make intelligent decisions.'" *Id.* (quoting *Donahue v. Quick Collect*, 592 F.3d 1027, 1034 (9th Cir. 2010)). So too here. What matters is not the precise term used to refer to mandatory civil process, but rather whether such process had

7

issued or was expected to be issued, because that fact could have materially impacted the debtor's decision about how to address the debt. Here, it had,[5] so the Account Manager's use of the word "summons" did not violate the FDCPA. *See Mendoza*, 2019 WL 2524117, at *5 (finding that a debt collector's use of a Pennsylvania area code when calling a Pennsylvania debtor, despite being located in Florida, did not violate § 1692e because the area code would not materially impact the debtor's decision about how to address the debt); *Bermudez*, 2019 WL 415569, at *4 (same).

The Court addresses Ohai's third and fourth arguments—that no summons issued in the underlying state court case and that she was not actually required to appear in that case—together. As discussed above, whether the mandatory process that issued in the underlying state court case is technically called a summons is semantic, pedantic, and irrelevant to Ohai's FDCPA claim.[6] Similarly, Ohai's contention that she was not required to appear in state court to defend LVNV's action against her is patently false. In issuing the complaint, which it did on March 26, 2021, the state court warned Ohai that she was required "to appear at the hearing and present [her] defense" and that if she failed to do so "judgment may be entered against [her] by default." (Doc. No. 5-1 at 3, 7, 10.) Ohai's argument that she was never required "to appear in

---

[5] Based on the docket entries in the underlying state case—of which the Court takes judicial notice, *see In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005)—it appears that the state court had already issued the certified complaint and Ohai had already accepted service of it (Doc. No. 5-1 at 3).

[6] To the extent Ohai is raising a temporal argument—that the use of the word "summons" was false, deceptive, and misleading because civil process had not *yet* issued in the state court case, this, too, is unavailing. During the second phone conversation, the Account Manager asked Ohai if she had received the summons yet. (Doc. No. 5-2, May 19, 2021 Phone Recording at 3:08.) Since the suit had been filed almost two months prior (*see* Doc. No. 5-1 at 3) and Ohai had already accepted service of the certified complaint, *see supra* n.5, there was nothing false, deceptive, or misleading in the Account Manager's question. In fact, on the May 6, 2021 phone call, Ohai asked P&F whether her outstanding balance included court costs and attorneys' fees, suggesting that she was already aware that P&F had commenced the suit against her. (Doc. No. 5-2, May 6, 2021 Phone Recording at 2:50–3:06.)

court or provide an answer to the suit" (Doc. No. 10-1 at 2) is simply wrong. FDCPA liability cannot lie against P&F on this basis, either. *See Zarichny*, 80 F. Supp. 3d at 622 (dismissing a § 1692e claim where "plaintiff's allegations [were] devoid of any communications from [defendant] that could be reasonably be interpreted as anything other than a request that she contact the company about a debt"); *see also Levins*, 902 F.3d at 284 (affirming dismissal of a § 1692e(10) claim where the debt collector left voicemail messages that did not include inaccurate or deceptive information).

There is no way of interpreting the Account Manager's use of the word "summons" during the phone call *initiated by* Ohai as indicating anything other than that mandatory civil process had issued or was going to issue in the lawsuit against Ohai that P&F had filed on LVNV's behalf—an accurate statement. Therefore, the Court finds that Ohai has failed to state a claim upon which relief can be granted as against P&F.[7] Having listened to and reviewed the transcript of the allegedly FDCPA-infringing phone call, the Court concludes that Ohai will not be able to amend her complaint to allege a plausible violation of the FDCPA. Accordingly, P&F's motion to dismiss is granted, and Ohai's complaint is dismissed with prejudice as to her claims against P&F.

An appropriate Order follows.

---

[7] Because LVNV has neither moved for dismissal nor judgment on the pleadings, the Court takes no position in this Memorandum as to whether Ohai has stated a claim upon which relief can be granted as against that Defendant.